John G. MASLER, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 93–SC–184–DG.

Supreme Court of Kentucky.

March 23, 1995.

---

Harley N. Blankenship, Louisville, for appellant.

Charles E. Theiler, II, Sitlinger, McGlincy, Steiner Theiler & Karem, Louisville, for appellee.

REYNOLDS, Justice.

As this case is premised upon the uninsured motorist statute, KRS 304.20–020, which insurance is fault-based coverage, the sole issue before the Court becomes whether or not the physical contact as described in the agreed statement of facts considered by both the trial court and the Court of Appeals is sufficient to bring an occurrence within the uninsured motorist coverage of appellee's insurance policy.

A narrow issue exists because of the following stipulation of facts:

1. Plaintiff, John G. Masler, is the named insured on a policy of automobile liability insurance sold by Defendant, State Farm Mutual Automobile Ins. Co. (hereinafter "State Farm").

2. On or about April 22, 1987, Plaintiff was driving his automobile northbound on National Turnpike when an unidentified truck with dual tandem wheels approached traveling southbound.

3. As the unidentified truck passed, a rock entered the windshield of Plaintiff's vehicle striking Plaintiff and causing him injury.

4. The truck did not stop and remains unidentified.

5. There was no physical contact between the truck, itself, and Plaintiff's vehicle.

The applicable portion of the uninsured motorist statute states:

**304.20–020. Uninsured vehicle coverage, insolvency of insurer.**—(1) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance

or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39–110 under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

The insurance policy relating to uninsured motorist coverage states, in pertinent part, as follows:

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The ***bodily injury*** must be caused by accident arising out of the operation, maintenance or use of an ***uninsured motor vehicle.***

*UNINSURED MOTOR VEHICLE—* means:

. . . . .

2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

a. the *insured* or
b. the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured.*

This is a facts-stipulated case for which there is no exacting authority to change the Court's prior holdings and to circumvent the legislature's policy in regard to the uninsured motorist statute, KRS 304.20–020. As the Minority view will acknowledge, this is a case in which the issue is a narrow one. The resultant stipulation of fact says it all:

"There was no physical contact between the truck, itself, and the plaintiff's vehicle."

■ Uninsured motorist insurance is a fault-based coverage obligating insurers to provide indemnification for injuries caused either by uninsured or unidentified motorists. This type of insurance coverage is neither an all-risk insurance designed to provide coverage for all injuries incurred, nor is it a no-fault motor vehicle insurance that provides coverage without regard to whether a plaintiff is legally entitled to recover damages from an uninsured or unidentified motorist. *See* Widiss, *Uninsured and Underinsured Motorist Insurance,* Section 9.2, page 443 (1992).

■ The accepted and recognized rationale for the "striking" requirement of a policy when the identity of a hit and run motorist is unknown is to foreclose fraudulent and collusive claims. *Jett v. Doe,* Ky., 551 S.W.2d 221 (1977), recognizes the purpose of the standard form provision which is contained in State Farm's policy of insurance. The requirement means actual, direct, physical contact between the hit and run vehicle, itself, and the insured's vehicle. *See State Farm Mutual Automobile Insurance Co. v. Mitchell,* Ky., 553 S.W.2d 691 (1977). This Court has chosen not to expand the actual, direct, physical contact requirement to indirect physical contact.

Other forums have chosen to extend coverage disputes ranging from the classic "no contact" situations to those where drivers speak of taking evasive action to avoid being struck by thrown or propelled objects. Such other cases have turned either upon legislative provisions statutorily mandating coverage or the applicable provisions of an insurance policy's coverage terms describing the scope of protection.

In any event, it is clear, whether we agree or not, that the State Farm policy clearly and unambiguously provides that a hit and run vehicle must strike the insured or the vehicle occupied by the insured in order for uninsured motorist coverage to arise.

■ The terms of insurance coverage should not be extended beyond any clear or

unambiguous limit. The state enactment of uninsured motorist coverage provides a general outline of the coverage required and permits the various insurance companies to specifically define the limit and coverage terms. Even now, no one claims the conditions or terms of the contract to be unreasonable. *See State Farm Mutual Automobile Insurance Company v. Christian,* Ky., 555 S.W.2d 571 (1977). The "hit and run" insurance clause is not in conflict with the uninsured motorist coverage legislatively mandated in KRS 304.20–020. The wording in Kentucky's statute is recognized to be different from that in other jurisdictions and in this state insurers can validly restrict, definitionally, the ·term "uninsured motorist." *Jett, supra.*

The treatment of the "physical contact" policy provision has continued uninterruptedly. *Belcher v. Travelers Indemnity Co.,* Ky., 740 S.W.2d 952 (1987). It is in accord with public policy rather than against it.

 Whatever the rationale employed in analyzing the objects propelled by an unidentified vehicle cases, it is clear that they do not involve the type of physical contact intended by insurers as a coverage requirement for uninsured motorist insurance. *See* Widiss, *supra,* p. 471. Questions of whether a plaintiff is legally entitled to coverage are answerable within the insurance policy; i.e., the insurance industry. The conception for what is the appropriate protective scope for risk is in the coverage terms or for the legislature to address. The terms of an insurance policy are held to be enforceable as written absent a statute to the contrary. *Osborne v. Unigard Indemnity Co.,* Ky.App., 719 S.W.2d 737 (1986).

 As neither the doctrine of reasonable expectation nor the doctrine of ambiguity arise under the stipulated facts and circumstances of this case, the remarks of Chief Judge Cardozo are applicable—"Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension. The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity." The policy provision developed in light of the statute is neither unjust or absurd and, in

this case, simply means that there is no coverage. *See Surace v. Danna,* 248 N.Y. 18, 161 N.E. 315 (1928).

While the ends of justice in individual cases may be served by facile interpretations of the "physical contact" condition in the coverage terms of the policy, the public's interest in regard to these cases would be nobly served if the insurance industry would redraft coverage terms to provide more comprehensive coverage for such accidents. Advocating this context, the problem typically is not a question of requiring corroboration from witnesses, rather it requires a broader conception for what is the appropriate scope of protection for the risks that are covered by this insurance.

Legislation has, in several states, mandated that coverage be provided for hit and run accidents that do not involve physical contact when the claimant's allegations about the cause of the events are corroborated. *See* Widiss, *supra,* p. 471; *see also* A.S. Klein, Annotation, *Uninsured Motorist Indorsement: Validity And Construction Of Requirement That There Be "Physical Contact" With Unidentified Or Hit–And–Run Vehicle,* 25 A.L.R.3d 1299 (1969).

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion.

STUMBO, J., dissents by separate opinion in which LAMBERT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The insurance policy's physical contact requirement is *in derogation of the coverage* mandated by KRS 304.20–020. The statute mandates coverage

> ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including

death, resulting therefrom. KRS 304.20–020(1).

The coverage defined in and required by subsection (1) provides for no exceptions, and requires no physical contact from the offending vehicle. It requires only that the claimant is "legally entitled to recover damages."

The statute then specifies in subsection (2) *three instances* (and only three) wherein "uninsured motor vehicle" may be "deemed to include an insured motor vehicle" for purposes of the statute, "subject to the terms and conditions of such coverage." These instances are: (1) where the insurer of the offending vehicle is insolvent, (2) where the offending vehicle has coverage "less than the limits described in KRS 304.39–110," and (3) where the insurer of the offending vehicle has "denied" coverage. KRS 304.20–020(2).

The phrase "subject to the terms and conditions of such coverage" in subsection (2) explains that coverage may be limited *in the three specified instances* by doing so in the "terms and conditions of such coverage;" i.e., the policy must so state. Nothing in subsection (2) permits the insurance company to add "physical contact" as part of the terms and conditions of coverage. *Jett v. Doe,* Ky., 551 S.W.2d 221 (1977) and its progeny are plainly mistaken in construing the words "subject to the terms and conditions of such coverage" in subsection (2) of the statute as giving insurers *carte blanche* to impose exclusions to coverage as they deem reasonable, in derogation of the statutory coverage mandated in subsection (1).

The uninsured motorist law provides statutory coverage for the liability of an offending uninsured motorist, permitting the insurance company to include in the policy three specified exceptions. Physical contact is *not* one of those exceptions. If the driver of the offending truck had been identified and proved at fault, he would be liable. If he had liability insurance, his carrier would be required to cover the loss. If the offending motorist is identified but uninsured, he is personally liable. Thus the real issue here is not physical contact; it is whether an unidentified motorist should be classified as an uninsured motorist. The statute should be construed as including an unidentified motor-

ist within the concept of an uninsured motorist because, when the offending motorist is unidentified, no recovery can be obtained from an insurance company providing coverage to the offending motorist.

In any event, in this case the policy expressly provides that "UNINSURED MOTOR VEHICLE" includes "A 'hit-and-run' land motor vehicle whose owner or driver remains unknown." Of course, the policy also expressly requires physical contact, but this conflicts with the statute. *Without question,* under this policy coverage is provided if we would only adhere to the provisions of the Uninsured Motorist statute as written instead of permitting additional exceptions. We have stripped away the plain meaning of the statute.

Physical contact between the vehicle driven by the offending motorist and the claimant's vehicle, *per se,* has nothing to do with this statute, and nothing to do with this problem.

STUMBO, Justice, dissenting.

As noted in the majority opinion, we are here presented with an extremely narrow issue, whether an object thrown from or propelled by an uninsured vehicle which strikes the insured or the insured's vehicle causing bodily injury, is sufficient contact so as to require the insurer to provide coverage.

In *State Farm Mutual Automobile Insurance Company v. Christian,* Ky., 555 S.W.2d 571, 572 (1977), this Court made the following observation:

> We have noted on several past occasions that in enacting KRS 304.20–020, the General Assembly did not presume to write an uninsured motorist policy, but merely gave a general outline of the coverage required, the legislature recognizing that the limits and terms of the statute's general outline of required coverage would of necessity be specifically defined by reasonable "terms and conditions" in the various insurance contracts. (Citations omitted.) Reasonable exclusions fall within the "terms and conditions" to which the statute's application is subject.

In *Preferred Risk Mutual Insurance Company v. Oliver,* Ky., 551 S.W.2d 574, 577 (1977), we stated that:

> [I]t must be noted that the purpose of mandatory uninsured motorist coverage is to provide those who purchase liability insurance with the same protection that they would have had if the uninsured motorist had carried the minimum limits of liability coverage.

Finally, we come to the cases in which hit-and-run situations are specifically involved. The first is *Jett v. Doe,* Ky., 551 S.W.2d 221 (1977), in which the insured was injured as a result of her car leaving the highway and crashing into a number of trees after the insured lost control of the vehicle while swerving to avoid collision with a recklessly driven, unknown vehicle. There was no physical contact between the insured's vehicle and the unknown defendant, which was specifically required by her uninsured motorist protection. Therein, *Jett* argued that the physical contact requirement was an unreasonable restriction and should be inapplicable where the accident was witnessed by an impartial observer attesting that it resulted from the actions of the unidentified vehicle. *Id.* at 222. This Court held that based upon the "subject to the terms and conditions of such coverage" language contained in subsection two (2) of KRS 304.20–020, the insurer had the right to require whatever conditions precedent to the insurance coverage it deemed appropriate.

In a similar case during that same year, we held that there was no coverage where the insured's vehicle was struck by another vehicle which had been forced from its lane of travel by an unknown vehicle. *State Farm Mutual Automobile Insurance Company v. Mitchell,* Ky., 553 S.W.2d 691 (1977). Relying upon *Jett, supra,* this Court once again concluded that a physical contact requirement was not in conflict with the statute. Therein the Court noted that the majority rule was:

> [W]here an unknown hit-and-run motorist strikes a third vehicle, which in turn strikes the insured vehicle, there is "actual physical contact" within the meaning of the contractual requirements contained in an uninsured motorist policy. *State Farm Mutual Automobile Insurance Company v. Carlson,* 130 Ga.App. 27, 202 S.E.2d 213 (1973); *Louthian v. State Farm Mutual Insurance Company,* C.A.4th Cir., 493 F.2d 240 (1973).

*Mitchell, supra,* at 692. The Court then concluded that where there was no actual physical contact between the hit-and-run vehicle, itself, and *either* the insured vehicle or the intermediate vehicle, the " 'physical contact' requirement of the hit-and-run clause of the uninsured motorist policy under consideration ... has not been met." *Id.* at 292 (emphasis added).

Thus, this Court appeared to recognize that there is a possibility of coverage where the unknown hit-and-run vehicle strikes another vehicle, which in turn strikes the insured vehicle.

The most recent in this line of cases is *Belcher v. Travelers Indemnity Company,* Ky., 740 S.W.2d 952 (1987). Therein the insured was in the middle of a chain-reaction accident. The unidentified vehicle involved was at the front of the chain and none of the other vehicles involved ever came in contact with that car. Once again, the insurance contract required physical contact by the uninsured motor vehicle with the insured or the insured's vehicle. *Id.* at 953. The Court discussed the policy reasons behind a requirement by an insurance company for physical contact with an unidentified car noting that same protects the insurer from fraud. "Without such a requirement, insureds could damage their own car and recover, claiming fault with some third party." *Id.* at 953. Thus, the insurer protects itself from the phantom car scenario.

A factor that each of these cases has in common is that the unidentified vehicle has had physical contact with nothing that came in contact with the insured or his vehicle, thereby causing the injuries for which coverage is sought. The case at bar is more analogous to the hypothetical situation addressed in *State Farm Mutual Automobile Insurance Company v. Mitchell, supra,* in which a third vehicle is struck by an unknown or unidentified vehicle. Thus, the issue presented in this case is whether an

object which may have been either part of the load of the unknown vehicle or thrown from the wheels of the unknown vehicle striking the insured vehicle is sufficient contact to require coverage. I believe that it is.

In construing provisions of uninsured motorist coverage, this Court has repeatedly noted that uninsured motorist coverage is personal to the insured and that we must look at the insured's reasonable expectation with regard to the insurance coverage which has been bought and paid for. *See, e.g., Meridian Mutual Insurance Company v. Siddons,* Ky., 451 S.W.2d 831 (1970); *Ohio Casualty Insurance Company v. Stanfield,* Ky., 581 S.W.2d 555 (1979); *Chaffin v. Kentucky Farm Bureau Insurance Companies,* Ky., 789 S.W.2d 754 (1990).

In this case, appellant has purchased insurance to pay for "bodily injury ... caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." The definition of an uninsured motor vehicle in appellant's policy included a hit-and-run land motor vehicle whose owner or driver remains unknown and which strikes the vehicle the insured is occupying thereby causing bodily injury. It is appellant's theory of the case that the operation of the uninsured motor vehicle resulted in the striking that caused his injuries. Appellee would have us make a distinction between a direct-contact strike, vehicle to vehicle, and the striking of another object by the uninsured vehicle, which object then strikes the insured or his vehicle causing injury. I do not believe that such a distinction need be made, particularly in the fact situation before us. In plain language, I do not have a phantom vehicle.

Here, the parties have stipulated that as the unidentified truck passed, a rock entered the windshield of appellant's vehicle striking him and causing him injury. The rock has been recovered, and is available for admission into evidence in the case. Thus, there is some physical evidence that the facts will support appellant's theory of the case. Whether a rock of the size and nature described in the briefs could have dislodged from a passing truck, or been thrown by the wheels of a truck, and whether the truck driver or owner was negligent thereby are questions of fact for a jury to determine.

I would, therefore, reverse and remand the decision of the Court of Appeals.

LAMBERT, J., joins this dissenting opinion.